**OFFICE OF THE CITY ATTORNEY**
**City of Scottsdale**
R. Bruce Washburn (SBN: 015346)
Eric C. Anderson (SBN 016114)
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
Telephone:  480-312-2405
Facsimile:  480-312-2548
legal@scottsdaleaz.gov

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| NEXTG NETWORKS OF CALIFORNIA, INC. d/b/a NEXTG NETWORKS WEST,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SCOTTSDALE,<br><br>Defendant. | No.<br><br>**NOTICE OF REMOVAL**<br><br>**(Maricopa County Superior Court No. CV2010-000832)** |

Pursuant to 28 U.S.C. § 1441 *et seq.*, Defendant City of Scottsdale ("the City") files this Notice of Removal and shows the Court the following:

1.      On January 7, 2010, Plaintiff NextG Networks of California, Inc., dba NextG Networks West, through its counsel, Lewis and Roca, LLP, filed a civil action in the Superior Court of the State of Arizona in and for Maricopa County ("State Court"), asserting claims under federal law.  The civil action cites 47 U.S.C. § 253.  The civil action also raises claims arising under Arizona State law.

2.     The civil action filed by Plaintiff in the State Court is captioned NextG Networks of California, Inc., dba NextG Networks West, Plaintiff vs. City of Scottsdale, Defendant. The State Court cause number is CV2010-000832 and is assigned to the Honorable Bethany Hicks.

3.     The City of Scottsdale was served with the Summons and Complaint on January 11, 2010.   Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days of service of the initial pleadings and is timely.   To the City's knowledge, no other pleadings have been filed in the State Court.   Copies of the Summons, Complaint and other documents which have been filed in State Court, are attached as Exhibit A.

4.     This Court has supplemental jurisdiction over any State claims pursuant to 28 U.S.C. § 1367.

5.     The City is a municipality organized under the laws of Arizona and is a person subject to suit in this lawsuit.   Plaintiff is believed to be a Delaware corporation.   Accordingly, there is diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332.

6.     Pursuant to 28 U.S.C. § 1441, *et seq.*, the City removes this action currently pending in the State Court to this Court, which is the District Court of the United States for the district in which the State Court action is pending.   Pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331, this action may be removed to this Court by the City because this Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiff's claims arising under the laws of the United States.

7.     Plaintiff's claims arising exclusively under Arizona State law, if any, may also be removed to this Court in accordance with 28 U.S.C. § 1441(c) and 28 U.S.C. § 1367.

8.      Pursuant to 28 U.S.C. § 1446(d), the City will give written notice of filing this Notice of Removal to all parties promptly after this Notice of Removal is filed with the Court. A copy of this Notice of Removal has been filed with the Clerk of the State Court.

9.      I certify that a copy of this Notice of Removal to the United States District Court and for the District of Arizona was served this 1st day of February, 2010, by U.S. Mail, with adequate postage, to the following party(ies):

> Hon. Bethany Hicks
> Maricopa County Superior Court
> East Court Building
> 101 West Jefferson
> Phoenix, AZ  85003
>
> Jon Weiss, Esq.
> LEWIS AND ROCA LLP
> 40 North Central Avenue
> 19th Floor
> Phoenix, AZ  85004-4429
>
> T. Scott Thompson, Esq.
> Leslie Gallagher Maylan, Esq.
> DAVIS WRIGHT TREMAINE LLP
> 1919 Pennsylvania Avenue NW
> Suite 200
> Washington, DC  20006

WHEREFORE, Defendant removes this action to the District Court.

RESPECTFULLY SUBMITTED this 1st day of February, 2010.

**SCOTTSDALE CITY ATTORNEY'S OFFICE**

By: /s/ Eric C. Anderson
        R. Bruce Washburn
        Eric C. Anderson, Assistant City Attorney
        3939 North Drinkwater Boulevard
        Scottsdale, Arizona 85251
        Attorney for Defendant

6954522v1                                    3

1     **The foregoing was electronically**
     **filed** this 1st day of February, 2010,
2     with the United States District Court –
     District of Arizona.

3

     **COPIES** of the foregoing
4     mailed this 1st day of
     February, 2010, to:

5

     Hon. Bethany Hicks
6     Maricopa County Superior Court
     East Court Building
7     101 West Jefferson
     Phoenix, AZ  85003

8

     Jon Weiss, Esq.
9     LEWIS AND ROCA LLP
     40 North Central Avenue
     19th Floor
10    Phoenix, AZ  85004-4429

     T. Scott Thompson, Esq.
11    Leslie Gallagher Maylan, Esq.
     DAVIS WRIGHT TREMAINE LLP
     1919 Pennsylvania Avenue NW
12    Suite 200
     Washington, DC  20006

13

     Attorneys for Plaintiff

14

     /s/ Elaine Goetze

15

16

17

18

19

20

21

# EXHIBIT "A"

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

OFFICE OF THE
CITY CLERK

2010 JAN 11  PM 2: 43

1  40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
2  Telephone: (602) 262-5311

3  Jon Weiss, State Bar No. 015350
Direct Dial: (602) 262-5382
Direct Fax: (602) 734-3860
EMail: JWeiss@LRLaw.com

4  DAVIS WRIGHT TREMAINE LLP
T. Scott Thompson (pro hac vice application forthcoming)
5  Leslie Gallagher Moylan (pro hac vice application forthcoming)
1919 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006
6  Telephone: (202) 973-4200

7  Attorneys for Plaintiff
NextG Networks of California, Inc.

8              **SUPERIOR COURT OF ARIZONA**

9                **COUNTY OF MARICOPA**

10  NEXTG NETWORKS OF CALIFORNIA, )
INC. d/b/a/ NEXTG NETWORKS WEST, )
11                                )   No.        CV2010- 000832
                                 )
12               Plaintiff,       )
                                 )   **SUMMONS**
13        vs.                     )
                                 )
14  CITY OF SCOTTSDALE,           )
                                 )       IF YOU WANT THE ADVICE OF A
15               Defendant.       )       LAWYER, YOU MAY WISH TO CONTACT
                                 )       THE LAWYER REFERRAL SERVICE AT
16                                        602-257-4434 OR ON-LINE AT
    **THE STATE OF ARIZONA TO THE DEFENDANT:**   WWW.LAWYERFINDERS.ORG. LRS IS
                                          SPONSORED BY THE MARICOPA
17                                        COUNTY BAR ASSOCIATION
            City of Scottsdale
18          c/o Carolyn Jagger, City Clerk
            3939 N. Drinkwater Blvd.
19          Scottsdale, AZ 85251

20          **YOU ARE HEREBY SUMMONED** and required to appear and defend, within
    the time applicable, in this action in this Court. If served within Arizona, you shall appear
21  and defend within 20 days after the service of the Summons and Complaint upon you,
    exclusive of the day of service. If served out of the State of Arizona -- whether by direct
22  service, by registered or certified mail, or by publication -- you shall appear and defend
    within 30 days after the service of the Summons and Complaint upon you is complete,
23  exclusive of the day of service. Where process is served upon the Arizona Director of
    Insurance as an insurer's attorney to receive service of legal process against it in this state,
24  the insurer shall not be required to appear, answer or plead until expiration of 40 days after
    date of such service upon the Director. Service by registered or certified mail without the
25  State of Arizona is complete 30 days after the date of filing the receipt and affidavit of
    service with the Court. Service by publication is complete 30 days after the date of first
26  publication. Direct service is complete when made. Service upon the Arizona Motor
    Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and
27  return receipt or Officer's Return. **RCP 4, 4.1, 4.2 and 12(a).**

28

2138210.1

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1    **YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief

2    demanded in the Complaint.

3    **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the

4    necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney.  **RCP 5, 10(d); ARS § 12-311.**

5

6    Copies of the pleadings filed herein may be obtained by contacting the clerk of Superior Court, Maricopa county, located at 201 West Jefferson, Phoenix, Arizona.

7    Requests for reasonable accommodation for persons with disabilities must be made

8    to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding.  Local Rules of Practice for the Superior Court, Maricopa County, Rule 2.5(c)

9    The name and address of plaintiff's attorney is:

10

11    Jon Weiss
       Lewis and Roca LLP
12    40 North Central Avenue
       Phoenix, Arizona  85004-4429
13    (602) 262-5382

14    SIGNED AND SEALED this date: _____

15                                    CLERK      JAN 0 7 2010

16

17                                    By_____
                                       Deputy Clerk

18

19

20

21

22

23

24

25

26

27

28

2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

COPY



JAN 0 7 2010

MICHAEL K. JEANES, CLERK
A. ASHER
DEPUTY CLERK

1   40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
2   Telephone: (602) 262-5311

Jon Weiss, State Bar No. 015350
3   Direct Dial: (602) 262-5382
Direct Fax: (602) 734-3860
EMail: JWeiss@LRLaw.com

4   DAVIS WRIGHT TREMAINE LLP
T. Scott Thompson (pro hac vice Application forthcoming)
5   Leslie Gallagher Moylan (pro hac vice application forthcoming)
1919 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006
6   Telephone: (202) 973-4200

Attorneys for Plaintiff
7   NextG Networks of California, Inc.

SUPERIOR COURT OF ARIZONA

COUNTY OF MARICOPA

10   NEXTG NETWORKS OF CALIFORNIA, )
INC. d/b/a/ NEXTG NETWORKS WEST, )
11                                        )   No. CV   CV2010-000852
                                          )
                              Plaintiff,  )   COMPLAINT FOR
12                                        )   DECLARATORY AND
        vs.                               )   INJUNCTIVE RELIEF
13                                        )
     CITY OF SCOTTSDALE,                  )
14                                        )
                              Defendant.  )
15   ─────────────────────────────────────)

16       For its Complaint against Defendant City of Scottsdale ("Scottsdale" or "the City"),

17   Plaintiff NextG Networks of California, Inc. d/b/a NextG Networks West ("NextG"), by

18   its undersigned counsel, alleges, upon knowledge as to its own actions and upon

19   information and belief as to all other matters, as follows:

20                                       **PARTIES**

21       1.       Plaintiff NextG is a corporation organized under the laws of the state of

22   Delaware, whose principle place of business is 2216 O'Toole Avenue, San Jose,

23   California, 95131.  On August 29, 2006, in Docket No. T-20377A-05-0484, the Arizona

24   Corporation Commission ("ACC") granted NextG a Certificate of Convenience and

25   Necessity to provide private line and intrastate access services in order to supply transport

26   and backhaul telecommunications services to other carriers, including but not limited to

27   wireless telecommunications services providers and wireless information services

28

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1  providers, within the State of Arizona. *See Order,* ACC Docket No. T-20377A-05-0484

2  (Aug. 29, 2006), attached as Exhibit A.

3       2.    Defendant Scottsdale is a municipal instrumentality of the State of Arizona

4  that was incorporated pursuant to Title 9, Chapter 1 of the Arizona Revised Statutes.

5  <div align="center">**JURISDICTION AND VENUE**</div>

6       3.    This Court has subject matter jurisdiction over this action pursuant to A.R.S.

7  § 12-123. This Court has concurrent jurisdiction over and may entertain the federal cause

8  of action presented herein.

9       4.    Venue is proper in this Court pursuant to A.R.S. § 12-401.

10  <div align="center">**STATEMENT OF FACTS**</div>

11  <div align="center">**NextG's Telecommunications Service**</div>

12       5.    NextG provides telecommunications services, as that term is defined by the

13  federal Communications Act.

14       6.    NextG's telecommunications service consists of providing transport of

15  NextG's customers' communications (both voice and data) between points designated by

16  the customer without alteration of the content of the communications.

17       7.    NextG's customers typically are providers of retail wireless

18  telecommunications services (also known as Commercial Mobile Radio Services "CMRS"

19  providers, cellular, or Personal Communications Services ("PCS") providers); however,

20  NextG's services are not limited to serving any specific type of wireless customer.

21       8.    NextG's typical telecommunications service offering involves a

22  communication signal handed off from NextG's customer to NextG that NextG then

23  transports over its fiber optic facilities. This handoff and transport takes place at and

24  through equipment configurations called "Nodes" that are located on utility or streetlight

25  poles located in the public rights of way or in private utility easements.

26       9.    The typical "Node" in NextG's network consists of electronic equipment

27  that converts Radio Frequency (*i.e.*, "RF" or wireless) format communications to light

28  signals carried over NextG's fiber optic lines. The equipment comprising a typical Node

<div align="center">2</div>

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1  in NextG's network includes a small, low-power antenna, laser and amplifier equipment

2  for the conversion of RF signals to optical signals (or from optical to RF), that is

3  connected to the antenna, fiber optic lines, and associated equipment such as power

4  supplies.

5    10.    Upon handoff from its customer, NextG transports communications through

6  NextG's fiber optic network to a distant point that is typically, but not always, an

7  aggregation point for NextG's communications called a "Base Station." The Base Station

8  is a central location that contains such equipment as routers, switches, and signal

9  conversion equipment. The Base Station is typically installed in a building located on

10 private property. NextG hands the communication signal back to its customer at the Base

11 Station, where the communications signal is interconnected with the public telephone

12 network.

13    11.    All wireless transmissions are performed by NextG's customers, who control

14 and are responsible for their licensed spectrum.

15    12.    Although NextG's service and network incorporates wireless reception

16 devices, NextG is not a wireless or commercial mobile radio service ("CMRS") provider.

17    13.    NextG does not hold or control any wireless spectrum licenses from the

18 FCC.

19    14.    NextG's fiber optic transmission lines are a fundamental component of its

20 network.

21    15.    The combination of Nodes, fiber optic lines, equipment, and Base Station

22 used by NextG to provide its telecommunications service is generally referred to as a

23 "Distributed Antenna System" ("DAS").

24    16.    In order to construct DAS networks and thereby provide telecommunications

25 services, NextG must have access to the public rights of way in which to place its

26 equipment.

27    17.    On August 29, 2006, the Arizona Corporation Commission ("ACC") granted

28 NextG a Certificate of Convenience and Necessity to provide private line and intrastate

3

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1    access services in order to supply transport and backhaul telecommunications services to

2    other carriers, including but not limited to wireless telecommunications services providers

3    and wireless information services providers, within the State of Arizona. *See Order,* ACC

4    Docket No. T-20377A-05-0484 (Aug. 29, 2006), attached as Exhibit A.

5        18.    NextG has a present and ongoing intention and desire to construct its

6    telecommunications facilities in the public rights of way in the City.

7    <div align="center">**Arizona's Statutorily Mandated Scheme For Issuing Licenses**
**To Install Telecommunications Facilities in the Public Way**</div>

8

9        19.    NextG is a telecommunications provider providing telecommunications

10   service pursuant to A.R.S. § 9-581. A.R.S. § 9-581(4) defines "Telecommunications" to

11   mean "the transmission, between or among points specified by the user, of information of

12   the user's choosing, without change in the form or content of the information as sent and

13   received. The term does not include commercial mobile radio services, pay phone

14   services, interstate services or cable services."

15       20.    NextG does not provide commercial mobile radio services, pay phone

16   services, or cable services, and its service to be provided in the City is not interstate

17   service.

18       21.    A.R.S. § 9-581(6) defines "Telecommunications services" to mean "the

19   offering of telecommunications for a fee directly to the public, or to such users as to be

20   effectively available directly to the public, regardless of the facilities used."

21       22.    A.R.S. § 9-581(5) defines "Telecommunications corporation" to mean "any

22   public service corporation to the extent that it provides telecommunications services in this

23   state."

24       23.    NextG is a Telecommunications Corporation under A.R.S. § 9-581.

25       24.    For the purposes of A.R.S. Sections 9-582 to and 9-583, "public highway"

26   and "highway" include any "dedicated public rights-of-way and public utility easements of

27   this state or a political subdivision." A.R.S. § 9-581.

28       25.    A.R.S. Section 9-583(A) provides that:

<div align="center">4</div>

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1               A political subdivision shall not adopt any ordinance that may
prohibit or have the effect of prohibiting the ability of any
2               telecommunications corporation to provide
telecommunications service.  Nothing in this section affects the
3               authority of a political subdivision to manage the public
highways within its jurisdiction or to exercise its police
4               powers.

5      26.     A.R.S. Section 9-583(B) provides that:

6               The governing board of a political subdivision may issue to a
telecommunications corporation a license or franchise to use
7               the public highways within the political subdivision to
construct, install, operate and maintain telecommunications
8               facilities. *The political subdivision shall issue licenses or
franchises on a competitively neutral and nondiscriminatory*
9               *basis* to persons subject to this section . . . .

10   A.R.S. § 9-583(B) (emphasis added).

11      27.     A.R.S. Section 9-583(B) further provides that a political subdivision may

12   condition the issuance of a license to install telecommunication facilities in the public way

13   only on certain enumerated "*reasonable, competitively neutral and nondiscriminatory*

14   *requirements,*" which include only (1) proof that the applicant has received a certificate of

15   convenience and necessity from the ACC; (2) public highway use requirements; (3)

16   mapping requirements; and (4) insurance, performance bonds, indemnification or similar

17   requirements.

18      28.     A.R.S. Section 9-582(A) provides in relevant part:

19               A political subdivision shall not levy a tax, rent, fee or charge
to a telecommunications corporation for the use of a public
20               highway to provide telecommunications services, or levy a tax,
fee or charge upon the privilege of engaging in the business of
21               providing telecommunications services within that political
subdivision other than:
22

23               1.    **Any transaction privilege tax authorized by law on
the business of providing telecommunications services.** . . . ;

24               2.    **A telecommunications application fee** for the issuance
of a telecommunications license or franchise if the application
25               fee applies on a competitively neutral and nondiscriminatory
basis to all telecommunications corporations that use the
26               public highways to provide telecommunications services. . . . ;

27               3.    **A telecommunications construction permit fee** for the
issuance of a construction permit to place telecommunications
28               facilities in the public highways if the permit fee applies on a

5

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

competitively neutral and nondiscriminatory basis to all
telecommunications corporations that place
telecommunications facilities in the political subdivision's
public highways to provide telecommunications services. . . . ;

    4.    A fee under section 9-583, subsection C.

A.R.S. § 9-582(A)(1-4) (emphasis added).

    29.    For the purposes of A.R.S. § 9-582(A), a "political subdivision" means any Arizona "city, town or county, or a special district of a city, town or county." A.R.S. § 9-581(2). A "public highway" means "all roads, streets and alleys and all other dedicated public rights-of-way and public utility easements of this state or a political subdivision." A.R.S. § 9-581(3).

    30.    Arizona state law permits cities to impose a per-linear foot fee for underground lines carrying *interstate* telecommunications services. A.R.S. § 9-583(C) provides that "[a] political subdivision may require a telecommunications corporation that will place underground facilities in the public highways, *exclusive of facilities used by the local network and the portion of the interstate network that carries intrastate calls*, for interstate telecommunications services to pay a fee as provided in this subsection." A.R.S. § 9-583(C) (emphasis added).

    31.    The fee that may be charged under A.R.S. § 9-583(C) is "an annual fee based on the number of linear feet of trench in the public highways in which the telecommunications corporation has placed facilities *that carry interstate traffic between and among the telecommunications corporation's interstate points of presence exclusive of facilities used by the local network and the portion of the interstate network that carries intrastate calls*." A.R.S. § 9-583(C)(2)(emphasis added).

    32.    The Arizona Corporation Commission granted a CCN to NextG authorizing it to provide "private line and *intrastate* access services." *See In re Application of NextG Networks of California, Inc.*, Docket No. T-20377A-05-0484 ¶ 1 (Aug. 29, 2006) (emphasis added), attached as Exhibit A.

6

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1      33.    The Arizona Corporation Commission adopted the recommendation of the

2  Arizona Corporation Commission Staff that NextG "be granted Certificate to provide the

3  requested intrastate services." *Id.* at ¶ 20.

4      34.    Because the City's ability to assess per-linear foot fees for underground lines

5  extends only to providers of interstate telecommunications services, A.R.S. § 9-583(C),

6  the City is prohibited from collecting such per-linear foot fees from NextG under state

7  law.

8      35.    The City is barred from collecting fees from NextG above and beyond a

9  transaction privilege tax, an application fee, and a construction permit fee. A.R.S. § 9-

10  582(A)(1).

11      36.    As set forth in Section 470 of Appendix C of the Scottsdale Revised City

12  Code, the City has adopted and imposes a transaction privilege tax on the provision of

13  telecommunications service in the City at a rate of 1.65% of the gross receipts generated

14  from the provision of telecommunications services in the City.

15  **The City's Unlawful Fees And Scheme For Permitting Access To The Public Way**

16      37.    On March 10, 2009, NextG approached the City to initiate the process of

17  applying for a telecommunications permit in order to install its facilities in the public right

18  of way.

19      38.    On April 23, 2009, the City responded to NextG's request by stating that "[a]

20  telecommunications license can be issued under § 47-161 *et seq.* of the Scottsdale City

21  Code if the criteria stated therein are met." *See* April 23, 2009 letter from Kevin Sonoda,

22  Wireline Telecommunications Manager, City of Scottsdale, to Joe Moline, Director of

23  Government Relations, NextG Networks, attached hereto as Exhibit B.

24      39.    Section 47-163 of the Scottsdale City Code requires a telecommunications

25  corporation to first obtain a permit before installing or constructing telecommunications

26  facilities in the public way. Section 47-161 states that the issuance of such licenses must

27  be "on a competitively neutral and nondiscriminatory basis."

28

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

40. Section 47-166 of the Scottsdale City Code sets forth the fees charged by the City for the issuance of permits to telecommunications corporations to construct and install telecommunications facilities in the public way.

41. The April 23, 2009 letter from the City invited NextG to complete an application for a telecommunications license pursuant to the above-referenced provisions of the Scottsdale City Code; however, the letter added that "the City has some questions whether or not the CC&N held by NextG was properly issued by the Arizona Corporation Commission." The City thus implicitly suggests that it does not believe NextG is eligible for a telecommunications license because of the City's doubts as to the veracity of NextG's CCN.

42. The City has subsequently asserted that the ACC did not have jurisdiction or authority to issue NextG's CCN.

43. The City does not have authority unilaterally to decide that NextG's CCN is invalid or improperly granted and, absent an order to the contrary by the ACC, NextG's CCN is binding and conclusive evidence of its status under Arizona law, and the City must abide by it.

44. Also, the April 23, 2009 letter from the City to NextG stated that "[t]he installation of [wireless communications facilities] in the City's rights of way is not allowed under a City telecommunications license alone" and purported to impose an additional requirement on NextG to undergo a "separate approval and permitting process." Specifically, the letter stated that "[t]here are also separate permitting fees and annual fees for encroachment in the [right of way]. The annual permission for private improvement in the [right of way] (PIR) encroachment permit fee is $8,475. The annual (PIR) fees are currently scheduled to increase by 1.5% effective July 1, 2009. However, the annual encroachment fee is currently under review by the city and may be subject to change."

45. Section 47-107 of the Scottsdale City Code ("Encroachment Permit Fees") provides in pertinent part:

2137470.2

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

      (a)    The city council may establish fees for encroachments in city right-of-way.

      (b)    In additional to other encroachments, the city council may establish fees for wireless communications facilities and personal wireless service facilities installed, operated and maintained in the city's rights-of-way.

      *(c)    Such fees may vary across technological capabilities and legal classifications.*

(Emphasis added).

46.    On June 2, 2009, the Scottsdale City Council adopted Resolution No. 7983 entitled "A Resolution of the City of Scottsdale, Maricopa County, Arizona, Adopting An Adjusted Fee Schedule For Wireless Communication Facilities In The City's Rights-Of-Way And Repealing Resolution 6761 Establishing Rates And Fees For WIFI Service Providers" ("Resolution No. 7983"). A true and correct copy of Resolution No. 7983, including Exhibits thereto, is attached hereto as Exhibit C.

47.    Resolution No. 7983 states, in part, that the City Council "is authorized by City Code § 47-107 to establish fees for wireless communication facilities. . ." and the City Council "hereby approves and adopts the fee schedule for wireless communication facilities in the City's rights-of-way attached hereto as Exhibit A, and incorporated by reference to be a part of this resolution as if fully set forth herein. The new fees set forth and attached hereto as Exhibit A shall take effect on July 2, 2009."

48.    Exhibit A to Resolution No. 7983 sets forth annual "encroachment permit fees" for wireless communications facilities in the rights of way, starting at a minimum "Antenna Base Fee" of $3,011 for a wireless communications facility on an existing vertical element or pole and any associated ground equipment totaling 1 cubic foot up to 50 cubic feet.

49.    The annual encroachment permit fees for wireless communications facilities in the rights of way set forth in Resolution No. 7983 are not a transaction privilege tax.

50.    As set forth in Section 470 of Appendix C of the Scottsdale Revised City Code, the City has adopted and imposes a separate transaction privilege tax at a rate of

9

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1.65% of the gross receipts generated from the provision of telecommunications services in the City.

51.     Exhibit A to Resolution No. 7983, at paragraph (5) states that "[a]ll WCF [wireless communications facilities] in the ROW [right of way] must have a Permission for Private Improvement in the ROW (PIR) document submitted to the City for each WCF site installed and operated in the ROW."

52.     Exhibit A to Resolution No. 7983, at paragraph (7) states that "[t]he PIR is an encroachment permit allowing the WCF to be in the ROW; a WCF owner or applicant must obtain a 'Permission to Work in the ROW' permit to construct, repair or maintain the WCF site."

53.     The City has communicated to NextG that NextG's Node installations would be subject to the Annual Encroachment Permit Fees set forth in Exhibit A to Resolution No. 7983 and the requirement for a Private Improvement in the Right of Way ("PIR") permit.

54.     The City does not require telecommunications providers that do not utilize wireless equipment to obtain a PIR permit.

55.     The Node installation that NextG is under contract to install in the City is approximately .73 cubic feet in size (including the equipment box and antenna), and therefore would be subject to an annual fee of $3,011 under Resolution No. 7983 when attached to an existing utility in the public right of way.

56.     The fees charged by the City on telecommunications providers for access to and occupation of the public rights of way vary widely among the various telecommunications providers with facilities in the public way in Scottsdale.

57.     Prior to the adoption of Resolution No. 7983, pursuant to Resolution No. 6761, the City imposed fees on the deployment of "WiFi" Sites located in the public rights of way that ranged from as low as $40 annually per site (for 2008/2009) to maximum of $550 annually per site (for 2008/2009). On information and belief, in Resolution No. 7983 the City repealed the WiFi fees set forth in Resolution No. 6761 specifically because

10

2137470.2

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1   it was pointed out to the City that the WiFi fees demonstrated how discriminatory and

2   unreasonable were the "Wireless Encroachment Fees" the City sought to impose on DAS

3   Nodes.

4        58.   The City's agreement with TW Telecom of Arizona, LLC, imposes an

5   interstate fee of $1.92 per linear foot per year for occupation of the public right of way in

6   the City.

7        59.   On information and belief, Qwest Communications, the incumbent telephone

8   company in the City, pays *no* fees for access to and occupation of the public rights of way

9   in the City.

10       60.   On information and belief, Qwest Communications owns and operates

11  hundreds of miles of wires in the public rights of way in the City.

12       61.   On information and belief, Qwest Communications owns and operates

13  equipment enclosures located in the public rights of way, including on existing utility

14  poles, that are equal to or greater than one cubic foot in size.

15                              <u>COUNT I</u>

16                            **A.R.S. § 9-582**

17       62.   Plaintiff hereby incorporates by reference paragraphs 1 through 61 as if fully

18  set forth herein.

19       63.   A.R.S. Section 9-582(A) provides in relevant part:

20           A political subdivision shall not levy a tax, rent, fee or charge
             to a telecommunications corporation for the use of a public
21           highway to provide telecommunications services, or levy a tax,
             fee or charge upon the privilege of engaging in the business of
22           providing telecommunications services within that political
             subdivision other than:
23
             1.    Any transaction privilege tax authorized by law on the
24           business of providing telecommunications services. . . . ;

25           2.    A telecommunications application fee for the issuance
             of a telecommunications license or franchise if the application
26           fee applies on a competitively neutral and nondiscriminatory
             basis to all telecommunications corporations that use the
27           public highways to provide telecommunications services. . . . ;

28

                                    11                                   2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1
2
3
4

        3.    A telecommunications construction permit fee for the issuance of a construction permit to place telecommunications facilities in the public highways if the permit fee applies on a competitively neutral and nondiscriminatory basis to all telecommunications corporations that place telecommunications facilities in the political subdivision's public highways to provide telecommunications services. . . . ;

5

        4.    A fee under section 9-583, subsection C .

6

A.R.S. § 9-582(A)(1-4).

7
8
9
10
11

    64.    To the extent imposed on NextG, Section 47-107 of the Scottsdale City Code and Resolution No. 7983 impose fees on "a telecommunications corporation for the use of a public highway to provide telecommunications services" and fees for "the privilege of engaging in the business of providing telecommunications services within that political subdivision."

12
13
14

    65.    The fees or taxes imposed by the City in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 are not a transaction privilege tax authorized by law on the business of providing telecommunications services.

15
16
17

    66.    The fees or taxes imposed by the City in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 are not a telecommunications application fee for the issuance of a telecommunications license or franchise.

18
19
20
21

    67.    The fees or taxes imposed by the City in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 are not a telecommunications construction permit fee for the issuance of a construction permit to place telecommunications facilities in the public highways.

22
23
24
25
26

    68.    To the extent imposed on NextG, the fees or taxes imposed by the City in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 are not a fee to place underground facilities in the public highways, exclusive of facilities used by the local network and the portion of the interstate network that carries intrastate calls, for interstate telecommunications services.

27
28

    69.    To the extent applied to NextG, the fees or taxes imposed by the City in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 exceed the lawful

21374702

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1   fees or taxes the City is authorized to impose under A.R.S. § 9-582(A)(1-4) and are

2   therefore unlawful.

3       70.     To the extent imposed on NextG, the fees imposed by the City in Section 47-

4   107 of the Scottsdale City Code and in Resolution No. 7983 are not competitively neutral

5   and nondiscriminatory, and therefore, violate A.R.S. § 9-582(B).

6       71.     As a direct and proximate cause of the foregoing actions and requirements of

7   the City, NextG will suffer immediate, substantial and irreparable injury in an amount and

8   of a kind that cannot be adequately compensated through monetary damages and/or for

9   which there is no adequate remedy at law.

10                              **COUNT II**

11                          **A.R.S. § 9-583**

12      72.     Plaintiff hereby incorporates by reference paragraphs 1 through 71 as if fully

13   set forth herein.

14      73.     A.R.S. Section 9-583(A) provides that:

15              A political subdivision shall not adopt any ordinance that may
                prohibit or have the effect of prohibiting the ability of any
16              telecommunications corporation to provide
                telecommunications service. Nothing in this section affects the
17              authority of a political subdivision to manage the public
                highways within its jurisdiction or to exercise its police
18              powers.

19      74.     A.R.S. Section 9-583(B) provides that:

20              The governing board of a political subdivision may issue to a
                telecommunications corporation a license or franchise to use
21              the public highways within the political subdivision to
                construct, install, operate and maintain telecommunications
22              facilities. The political subdivision shall issue licenses or
                franchises on a competitively neutral and nondiscriminatory
23              basis to persons subject to this section . . . .

24      75.     The City's "separate approval and permitting process" for wireless

25   communications facilities, including the requirement to obtain a PIR Permit for each

26   individual Node, and the City's imposition of fees on wireless communications facilities in

27   Section 47-107 of the Scottsdale City Code and Resolution No. 7983 far in excess of those

28   imposed on other telecommunications corporations occupying the public rights of way

                              13
                                                    2137470.2



1  materially inhibit or limit NextG's ability to compete in a fair and balanced legal and

2  regulatory environment in Scottsdale and thereby prohibit or have the effect of prohibiting

3  the ability of NextG to provide telecommunications services in violation of A.R.S. § 9-

4  583(A) and is therefore unlawful, preempted, and unenforceable.

5      76.    The City's "separate approval and permitting process" for wireless

6  communications facilities, including the requirement to obtain a PIR Permit for each individual

7  Node, and the City's imposition of fees on wireless communications facilities in Section 47-107

8  of the Scottsdale City Code and Resolution No. 7983 far in excess of those imposed on other

9  telecommunications corporations occupying the public rights of way are not competitively neutral

10  and nondiscriminatory under and therefore violate A.R.S. § 9-583(B)

11      77.    As a direct and proximate cause of the foregoing actions and requirements of

12  the City, NextG will suffer immediate, substantial and irreparable injury in an amount and

13  of a kind that cannot be adequately compensated through monetary damages and/or for

14  which there is no adequate remedy at law.

15                              **COUNT III**

16                            **47 U.S.C. § 253**

17      78.    Plaintiff hereby incorporates by reference paragraphs 1 through 77 as if fully

18  set forth herein.

19      79.    Section 253(a) of the federal Communications Act ("Act") provides:

20          No State or local statute or regulation, or other State or local

21          legal requirement, may prohibit or have the effect of
            prohibiting the ability of any entity to provide any interstate or
            intrastate telecommunications service.

22  47 U.S.C. § 253(a).

23      80.    Section 253(c) of the Act provides:

24
25          Nothing in this section affects the authority of a State or local
            government to manage the public rights-of-way or to require

26          fair and reasonable compensation from telecommunications
            providers, on a competitively neutral and nondiscriminatory

27          basis, for use of public rights-of-way on a nondiscriminatory
            basis, if the compensation required is publicly disclosed by

28          such government.

                                14                              2137470.2

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1   47 U.S.C. § 253(c).

2       81.   The City is a state or local authority.

3       82.   NextG is an entity that provides telecommunications services.

4       83.   The City's "separate approval and permitting process" for wireless

5   communications facilities, including the requirement to obtain a PIR Permit for each

6   individual Node, and imposition of fees on wireless communications facilities far in

7   excess of those imposed on other telecommunications corporations occupying the public

8   rights of way materially inhibit or limit NextG's  ability to compete in a fair and balanced

9   legal and regulatory environment in Scottsdale, having the effect of prohibiting NextG's

10  ability to provide telecommunications service in the City in violation of 47 U.S.C. §

11  253(a), and are therefore unlawful, preempted, and unenforceable. .

12      84.   The City's "separate approval and permitting process" for wireless

13  communications facilities, including the requirement to obtain a PIR Permit for each

14  individual Node, and imposition of fees on wireless communications facilities far in

15  excess of those imposed on other telecommunications corporations occupying the public

16  rights of way are not competitively neutral and nondiscriminatory compensation for use of

17  the public rights of way nor competitively neutral and nondiscriminatory management of

18  the public rights of way, as permitted under 47 U.S.C. § 253(c).

19      85.   As a direct and proximate cause of the foregoing actions taken and

20  requirements imposed by the City, NextG will suffer immediate, substantial and

21  irreparable injury in an amount and of a kind that cannot be adequately compensated

22  through monetary damages and/or for which there is no adequate remedy at law.

23      WHEREFORE, Plaintiff NextG Networks of California, Inc. demands judgment in

24  its favor and that this Court enter:

25      (a)   A declaration and judgment that NextG is eligible for a telecommunications

26  license to install its facilities in the public right of way pursuant to Section 47-161 *et seq.*

27  of the Scottsdale City Code;

28

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1    (b)    A declaration and judgment that Section 47-107 of the Scottsdale City Code

2  and Resolution No. 7983 impose fees beyond those authorized in A.R.S. § 9-582(A)(1-4),

3  and therefore violate A.R.S. § 9-582 and are therefore void, invalid, and unenforceable;

4    (c)    A declaration and judgment that Section 47-107 of the Scottsdale City Code

5  and Resolution No. 7983 impose fees that are not competitively neutral and

6  nondiscriminatory in violation of A.R.S. § 9-582(B), and therefore are void, invalid, and

7  unenforceable;

8    (d)    A declaration and judgment that Section 47-107 of the Scottsdale City Code

9  and Resolution No. 7983 impose fees that effectively prohibit NextG from providing

10 telecommunications service in violation of A.R.S. § 9-583 and are therefore void, invalid,

11 and unenforceable;

12    (e)    A declaration and judgment that the City's "separate approval and permitting

13 process" for wireless communications facilities, including the requirement to obtain a PIR

14 Permit for each individual Node, and imposition of fees on wireless communications

15 facilities in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 far in

16 excess of those imposed on other telecommunications corporations occupying the public

17 rights of way effectively prohibit NextG from providing telecommunications service and

18 are therefore unlawful and preempted by A.R.S. § 9-583 and are therefore void, invalid,

19 and unenforceable;

20    (f)    A declaration and judgment that the City's "separate approval and permitting

21 process" for wireless communications facilities, including the requirement to obtain a PIR

22 Permit for each individual Node, and imposition of fees on wireless communications

23 facilities in Section 47-107 of the Scottsdale City Code and Resolution No. 7983 far in

24 excess of those imposed on other telecommunications corporations occupying the public

25 rights of way effectively prohibit NextG from providing telecommunications service and

26 are therefore unlawful and preempted by 47 U.S.C. § 253(a), and therefore void, invalid,

27 and unenforceable;

28

2137470.2

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1   (g)   An order enjoining the City from delaying NextG's installation of its

2   telecommunications facilities in the public right of way;

3   (h)   An order enjoining the City from enforcing Section 47-107 of the Scottsdale

4   City Code and Resolution No. 7983 against NextG;

5   (i)   An Order enjoining the City from requiring NextG to obtain a PIR permit for

6   any or all of NextG's Nodes;

7   (j)   An order mandating or an injunction requiring that the City grant NextG

8   such permits or other authority as is necessary to allow NextG to construct, operate, and

9   maintain its facilities in the public right of way; and

10   (k)   An order awarding NextG its costs, reasonable attorneys' fees and other

11   expenses incurred in this action and such other and further relief as the Court deems just

12   and proper.

13   DATED this 7th day of January, 2010.

14                                       LEWIS AND ROCA LLP

15

16                                       By

17                                          Jon Weiss

18                                       and

19                                       DAVIS WRIGHT TREMAINE LLP
                                         T. Scott Thompson (pro hac vice application
20                                       forthcoming)
                                         Leslie Gallagher Moylan (pro hac vice
21                                       application forthcoming)
                                         1919 Pennsylvania Avenue NW, Suite 200
22                                       Washington, DC  20006

23                                       Attorneys for Plaintiff
                                         NextG Networks of California, Inc.
24

25

26

27

28

17

2137470.2

# EXHIBIT A



0000061013

## BEFORE THE ARIZONA CORPORATION COMMISSION

COMMISSIONERS

JEFF HATCH-MILLER Chairman
WILLIAM A. MUNDELL
MIKE GLEASON
KRISTIN K. MAYES
BARRY WONG

Arizona Corporation Commission
DOCKETED

AUG 2 9 2006

| DOCKETED BY | |
|---|---|
| | nr |

IN THE MATTER OF THE APPLICATION OF
NEXTG NETWORKS OF CALIFORNIA, INC.
DBA NEXTG NETWORKS WEST FOR
APPROVAL OF A CERTIFICATE OF
CONVENIENCE AND NECESSITY FOR
TRANSPORT AND BACKHAUL SERVICES TO
OTHER CARRIERS, INCLUDING BUT NOT
LIMITED TO WIRELESS
TELECOMMUNICATIONS SERVICES
PROVIDERS AND POTENTIALLY TO
WIRELESS INFORMATION SERVICES
PROVIDERS.

DOCKET NO. T-20377A-05-0484

DECISION NO.   **68915**

**OPINION AND ORDER**

| | |
|---|---|
| DATE OF HEARING: | July 27, 2006 |
| PLACE OF HEARING: | Phoenix, Arizona |
| ADMINISTRATIVE LAW JUDGE: | Teena Wolfe |
| APPEARANCES: | Thomas H. Campbell, LEWIS AND ROCA, LLP, on behalf of NextG Networks of California, Inc. dba NextG Networks West; |
| | T. Scott Thompson, COLE, RAYWID & BRAVERMAN, LLP, on behalf of NextG Networks of California, Inc. dba NextG Networks West; and |
| | Keith Layton, Staff Attorney, Legal Division, on behalf of the Commission's Utilities Division Staff. |

**BY THE COMMISSION:**

Having considered the entire record herein and being fully advised in the premises, the

Arizona Corporation Commission ("Commission") finds, concludes, and orders that:

### FINDINGS OF FACT

1.    On July 1, 2005, NextG Networks of California, Inc. dba NextG Networks West

("NextG" or "Applicant") filed with the Commission an application for a Certificate of Convenience

S:\TWolfe\Telecom\privateline\050484.doc/

DOCKET NO. T-20377A-05-0484

1  and Necessity ("Certificate") to provide private line and intrastate access services in order to supply

2  transport and backhaul services to other carriers, including but not limited to wireless

3  telecommunications services providers and potentially to wireless information services providers

4  within the State of Arizona.

5   2.      On August 17, 2005, the Commission's Utilities Division Staff ("Staff") docketed a

6  copy of a letter informing Applicant of further information required for Staff to complete its analysis

7
   of the application.
8

9   3.      On October 17, 2005, Applicant docketed its responses to Staff's request for

10  additional information.

11   4.      On June 6, 2006, Staff filed a Staff Report on the application, recommending approval

12  subject to certain conditions.

13   5.      On June 16, 2006, a Procedural Order was issued setting the matter for hearing to take

14
   place on July 27, 2006, and setting associated procedural deadlines.
15

16   6.      On July 14, 2006, NextG filed an Affidavit of Publication demonstrating that notice of

17  the application was published in *The Arizona Republic*, a newspaper of general circulation in the

18  requested Certificate service area, on June 30, 2006.  No requests for intervention were filed.

19   7.      On July 26, 2006, Thomas H. Campbell and Michael T. Hallam filed a Motion and

20  Consent of Local Counsel for *Pro Hac Vice* Admission of Scott Thompson.

21   8.      The hearing convened as scheduled on July 27, 2006.  Admission *pro hac vice* was

22
   granted to Scott Thompson at the commencement of the hearing.  Applicant and Staff appeared
23

24  through counsel and presented evidence.  No members of the public appeared to provide public

25  comment.

26   9.      NextG is organized under the laws of Delaware as a C corporation, and has been

27  authorized to do business in Arizona since December 23, 2004.

28

DECISION NO. **68915**

10. NextG plans to offer private line and intrastate access services in order to provide transport and backhaul services of voice and data signals, primarily for wireless providers. NextG's "RF Transport Services" use optical technology, including multi-wavelength optical technology, over dedicated transport facilities to provide telecommunications companies with more efficient transport and greater overall network service options. RF Transport Services connect customer provided wireless capacity equipment to customer-provided or NextG provided bi-directional RF-to-optical conversion equipment at a hub facility. The hub facility can be customer or NextG provided. The conversion equipment will allow NextG to accept RF traffic from the customer and then send bi-directional traffic transmission across the appropriate optical networks. At the remote end, NextG or the telecommunications company will provide RF-to-optical conversion equipment to allow bi-directional conversion between optical signals and RF signals. RF signals can be received and radiated at this remote node. NextG will offer service subject to the availability of the necessary facilities and/or equipment. NextG currently has plans to operate in 27 states, and has commenced operations in California, Georgia and Illinois. At the hearing, NextG's witness testified that NextG plans to commence provision of service in Arizona within one year of receiving a Certificate.

11. NextG states in its application that it will rely on the financial resources of its parent company, NextG Networks, Inc. The Staff Report states that the 2005 financial statements provided by NextG list total assets of $44,638,000, total equity of $17,514,000, and net income of ($5,739,000).

12. The Staff Report states that NextG's parent and affiliates operate in 8 states and have approximately 36 employees and 11 contract workers with more than 150 years of combined experience in the wireless industry.

13. The application states that on March 9, 2005, the City and County of San Francisco filed a complaint against NextG associated with a dispute between NextG and the City regarding

DOCKET NO. T-20377A-05-0484

NextG's ability to construct in the public rights-of-way.  Staff states in its Staff Report that on January 19, 2006, Staff received a copy of a January 12, 2006 Order of the California Public Utilities Commission (CPUC Decision 06-01-006) finding on behalf of NextG.  Staff noted that the complaint did not involve issues related to customer service, but only jurisdictional issues raised by the City. NextG certified that neither the Applicant nor any of its officers, directors, partners or managers have been or are currently involved in any other formal or informal complaint proceedings pending before any state or federal regulatory commission, administrative agency, or law enforcement agency, or in any civil or criminal investigations, and that NextG's parent and affiliates have not had an application for service denied, or authority revoked, in any state.

14.     Applicant has the financial, technical, and managerial capabilities to provide the private line services and intrastate access services it is requesting authority to provide.

15.     Applicant will be providing service in areas where incumbent local exchange carriers ("ILECs"), along with various competitive local exchange carriers ("CLECs") and interexchange carriers ("IXCs") are providing telephone and private line services.

16.     Staff recommended that Applicant's proposed services be classified as competitive because there are alternatives to Applicant's services; Applicant will have to convince customers to purchase its services; Applicant has no ability to adversely affect the local exchange or interexchange service markets; and Applicant will therefore have no market power in those local exchange or interexchange service markets where alternative providers of telecommunications services exist.

17.     It is appropriate to classify all of Applicant's authorized services as competitive.

18.     NextG's proposed tariff lists a maximum rate for its proposed private line services and intrastate access services.  Staff reviewed NextG's proposed tariff, and states that while it lists a maximum rate, NextG's proposed tariff is based on actual rates, and notes that Commission rules require that the rate charged for a service may not be less than a company's total service long-run

DOCKET NO. T-20377A-05-0484

1    incremental cost of providing the service.  Staff states that since the services to be offered are highly

2    competitive and targeted for sophisticated carriers and communications companies experienced in

3    negotiating charges and other contract terms for point-to-point wireless voice and data services, Staff

4    believes the proposed rates are just and reasonable.  Staff also notes that the majority of NextG's

5    customers are expected to purchase services under individual case basis ("ICB") arrangements and

6    pricing.  Staff stated that while it considered the fair value rate base ("FVRB") information submitted

7
     by the Applicant, it did not believe the information deserved substantial weight in setting Applicant's
8

9    rates.

10       19.    The rates proposed by the application are for competitive services, and in general,

11   rates for competitive services are not set according to rate of return regulation.   Staff obtained

12   information from the Applicant that indicates its FVRB is zero.  Staff has reviewed the rates to be

13
     charged by the Applicant and believes they are just and reasonable as they are comparable to those of
14
     other competitive local carriers offering service in Arizona and comparable to the rates Applicant
15
     charges in other jurisdictions.  The rates to be ultimately charged by Applicant will be heavily
16

17   influenced by the market.  Because of the nature of the competitive market and other factors, a FVRB

18   analysis is not necessarily representative of Applicant's operations.

19       20.    Staff recommends that Applicant be granted a Certificate to provide the requested

20   intrastate telecommunications services subject to the condition that Applicant docket tariffs for each

21   certificated service conforming to the tariffs proposed in the application, within 365 days from the

22
     date of an Order in this matter or 30 days prior to providing service, whichever comes first, and that
23

24   the Certificate should become null and void after due process if it does not timely comply with the

25   condition.

26       21.    Staff further recommends the following:

27           (a)    that Applicant be ordered to comply with all Commission rules, orders, and
                    other requirements relevant to the provision of intrastate telecommunications
28                  services;

DECISION NO.   68915

DOCKET NO. T-20377A-05-0484

(b)    that Applicant be ordered to abide by the quality of service standards that were approved by the Commission for Qwest in Docket No. T-0151B-93-0183;

(c)    that Applicant be required to notify the Commission immediately upon changes to Applicant's name, address, or telephone number; and

(d)    that Applicant be ordered to cooperate with Commission investigations including, but not limited to customer complaints.

22.    Staff's recommendations, as set forth herein, are reasonable.

23.    Applicant's fair value rate base is determined to be zero for purposes of this proceeding.

## CONCLUSIONS OF LAW

1.    Applicant is a public service corporation within the meaning of Article XV of the Arizona Constitution and A.R.S. §§ 40-281 and 40-282.

2.    The Commission has jurisdiction over Applicant and the subject matter of the application.

3.    Notice of the application was given in accordance with the law.

4.    A.R.S. § 40-282 allows a telecommunications company to file an application for a Certificate to provide competitive telecommunications services.

5.    Pursuant to Article XV of the Arizona Constitution, as well as the Arizona Revised Statutes, it is in the public interest for Applicant to provide the telecommunications services set forth in its application.

6.    Applicant is a fit and proper entity to receive a Certificate authorizing it to provide private line and intrastate access services in order to supply transport and backhaul telecommunications services in Arizona as conditioned by Staff's recommendations to other carriers, including but not limited to wireless telecommunications services providers and wireless information services providers within the State of Arizona.

7.    The telecommunications services that Applicant intends to provide are competitive within Arizona.

6        DECISION NO. ___68915___

DOCKET NO. T-20377A-05-0484

1      8.    Pursuant to Article XV of the Arizona Constitution as well as the Competitive Rules,

2 it is just and reasonable and in the public interest for Applicant to establish rates and charges that are

3 not less than the Applicant's total service long-run incremental costs of providing the competitive

4 services approved herein.

5      9.    Staff's recommendations, as set forth herein, are reasonable and should be adopted.

6      10.    The maximum rates in Applicant's proposed tariffs are just and reasonable and should

7 be approved.

8 <div align="center">**ORDER**</div>

9      IT IS THEREFORE ORDERED that the application of NextG Networks of California, Inc.

10 dba NextG Networks West for a Certificate of Convenience and Necessity for authority to provide

11 private line and intrastate access services in order to supply transport and backhaul

12 telecommunications services to other carriers, including but not limited to wireless

13 telecommunications services providers and wireless information services providers, within the State

14 of Arizona shall be, and is hereby, granted, conditioned upon NextG Networks of California, Inc. dba

15 NextG Networks West's timely compliance with the following Ordering Paragraph.

16      IT IS FURTHER ORDERED that NextG Networks of California, Inc. dba NextG Networks

17 West shall file with docket control, as a compliance item in this case, within 365 days of this

18 Decision or 30 days prior to the commencement of service, whichever comes first, tariffs for each

19 service authorized herein conforming to the tariff pages filed with its application.

20      IT IS FURTHER ORDERED that if NextG Networks of California, Inc. dba NextG Networks

21 West fails to meet the timeframe outlined in the Ordering Paragraph above, the Certificate of

22 Convenience and Necessity conditionally granted herein shall become null and void after due

23 process.

24      IT IS FURTHER ORDERED that NextG Networks of California, Inc. dba NextG Networks

25 West shall comply with all of the Staff recommendations set forth in Findings of Fact No. 21 above.

26 . . .

27 . . .

28 . . .

<div align="center">7</div>

DECISION NO. <u>68915</u>

DOCKET NO. T-20377A-05-0484

1      IT IS FURTHER ORDERED that the services NextG Networks of California, Inc. dba NextG

2  Networks West is authorized to provide herein are hereby classified as competitive.

3      IT IS FURTHER ORDERED that this Decision shall become effective immediately.

4      BY ORDER OF THE ARIZONA CORPORATION COMMISSION.

5

6

7  CHAIRMAN                          COMMISSIONER

8

9

10  COMMISSIONER          COMMISSIONER          COMMISSIONER

11

12               IN WITNESS WHEREOF, I, BRIAN C. McNEIL, Executive

13               Director of the Arizona Corporation Commission, have
                 hereunto set my hand and caused the official seal of the

14               Commission to be affixed at the Capitol, in the City of Phoenix, this 24th day of August, 2006.

15

16               BRIAN C. McNEIL
                EXECUTIVE DIRECTOR

17

18  DISSENT _____

19

20  DISSENT _____

21  TW:mj

22

23

24

25

26

27

28

8               DECISION NO. **68915**

1    SERVICE LIST FOR:              NEXTG NETWORKS OF CALIFORNIA, INC. dba
                                           NEXTG NETWORKS WEST

2

3    DOCKET NO.:                    T-20377A-05-0484

4    T. Scott Thompson
      COLE, RAYWID & BRAVERMAN, LLP
5    1919 Pennsylvania Avenue, Ste. 200
      Washington, DC  20006
6    Attorneys for NextG Networks of California, Inc.

7    Thomas H. Campbell
      Michael T. Hallam
8    LEWIS AND ROCA
      40 N. Central Avenue
9    Phoenix, AZ  85004

10   Christopher Kempley, Chief Counsel
      Keith Layton, Staff Attorney
11    Legal Division
      ARIZONA CORPORATION COMMISSION
12   1200 West Washington Street
      Phoenix, Arizona 85007
13

      Ernest G. Johnson, Director
14   Utilities Division
      ARIZONA CORPORATION COMMISSION
15   1200 West Washington Street
      Phoenix, Arizona 85007
16

17

18

19

20

21

22

23

24

25

26

27

28

            DECISION NO. __68915__

# EXHIBIT B



Mcit Scottsdale
City Scottsdale of Arizona

**INFORMATION SYSTEMS**

7384 E. 2ND STREET
SCOTTSDALE, AZ 85251

(480) 312-2622 PHONE
(480) 312-2623 FAX

Kevin Sonoda
City of Scottsdale
7384 E. 2nd Street
Scottsdale, AZ 85251

April 23, 2009

Mr. Joe Milone, Director of Government Relations
NextG Networks
8000 Research Forest Dr., #115-250
The Woodlands, TX 77382

Re: March 10, 2009 Correspondence

Dear Mr. Milone,

Your March 10, 2009 correspondence directed to David Ellison has been forwarded to my office for response. I have also conferred with the City's legal department regarding the matters stated therein. At the outset, please be advised that your letter cannot be accepted by the City as a formal application for deployment of a fiber optic-based network facilities in the public rights-of-way (ROW).

For your convenience, I have enclosed the City's standard application form for obtaining a telecommunications license from the City.   While you should feel free to complete and submit the application for a telecommunications license, you should be advised that the City does not agree with the positions stated in your letter.

A telecommunications license can be issued under § 47-161 *et seq.* of the Scottsdale City Code if the criteria stated therein are met. After submission of a properly completed application, the City will determine if it is appropriate to issue a telecommunications license. You should also be aware that the City also allows installation of underground cables in the ROW through an appropriate contractual agreement which does not require the issuance of a telecommunications license. Most recently, the City reached an agreement with a dark fiber company  for permission to encroach upon the ROW at a price of $1.81 per lineal foot. I will also note that the City has some questions whether or not the CC&N held by NextG was properly issued by the Arizona Corporation Commission.

I have also reviewed the nature of the facilities which NextG proposes to install. From that review, it is apparent that the proposed network includes the installation of wireless communication facilities ("WCF") within the meaning of the Scottsdale Zoning Ordinance, § 7.200(H). The installation of WCF in the City's rights of way is not allowed under a City telecommunications license alone. In fact, all WCF currently installed in the City's rights of way belong to companies who do not have a telecommunications license with the City.

There is a separate approval and permitting process for each proposed WCF site which you will find outlined in the Zoning Ordinance. There are also separate permitting fees and annual fees for encroachment in the ROW. The annual permission for private improvement in the ROW (PIR) encroachment permit fee is $8,475. The annual (PIR) fees are currently scheduled to increase by 1.5% effective July 1, 2009. However, the annual encroachment fee is currently under review by the City and may be subject to change.

As a final note, I will advise you that the City does not agree with the contentions stated in your letter regarding the effect of NextG's CC&N or that the reasonable fees the City charges for WCF or fiber optic cable installation are in any way preempted by state or federal law.  I hope you find this information helpful. If you have further questions or need additional information, please feel free to contact my office. I can be reached at 480 312-4138 or via email at ksonoda@scottsdaleaz.gov

Sincerely,

Kevin Sonoda
Wireline Telecommunications Administrator

Printed on recycled paper

# EXHIBIT C

# CITY COUNCIL REPORT



---

MEETING DATE: 06/02/2009    ITEM NO. **12**    GOAL: Fiscal and Resource Management

---

**SUBJECT**

**Establish an adjusted fee schedule for wireless communications facilities in the City's rights-of-way and repeal Resolution No. 6761 establishing rates and fees for WiFi service providers.**

**REQUEST**

Adopt Resolution No. 7983 establishing an adjusted fee schedule for wireless communications facilities in the City's rights-of-way and repeal Resolution No. 6761 establishing rates and fees for WiFi service providers.

**Related Policies, References:**
*S.R.C. Chapter 47, Article III, §47-107. Encroachment permit fees.*
(a) The city council may establish fees for encroachments in city right-of-way.
(b) In addition to other encroachments, the city council may establish fees for wireless communications facilities and personal wireless service facilities installed, operated and maintained in the city's rights-of-way.

*City of Scottsdale Resolution No. 7952*
Adopted by City Council on May 19, 2009, for an adjusted fee schedule to certain planning and development rates and fees, included the following provision:

> Section 2. The official schedule of rates and fees for the Planning and Development Services Department enacted by Resolution 7587 are repealed effective July 1, 2009, with the exception of the encroachment permit fees for Wireless Communication Facilities, which would remain unchanged until they are examined and potentially adjusted at later time.

*Encroachment Permits/Improvements Fee Schedule* (as set forth by Resolution 7587, adopted on May 20, 2008) included fees for WCF in the ROW at $1,455 year 1 start up fee in addition to the fee of $8,475 per year.

*City of Scottsdale Resolution No. 6761*
Adopted by City Council on December 12, 2005, to amend S.R.C. 46-141 Fee Schedule to allow WiFi service providers to construct, install and operate a wireless internet and data communications network in the City's rights-of-way.

The fee structure was established as a four-year pilot through June 30, 2009; as such, paragraph 9 of the fee structure states:
> The City Council may revise these fees. The City Council intends to set new fees before the end of FY 2008/2009. If the Council fails to do that for any reason, then the FY 2008/2009 fees shall remain in effect until the City Council sets new fees.

Action Taken_____

**BACKGROUND**

In July 1995, the City Council approved an agreement with U S WEST New Vector (now Verizon Wireless), that allowed wireless communications facilities (WCF) sites to be installed and operated in the City's rights-of-way (ROW). The agreement placed Scottsdale on the forefront of public policy for wireless sites. Since that time, wireless companies have installed 59 WCF sites in Scottsdale's ROW at the current annual fee of $8,475 per site.

As wireless communications becomes entrenched in our daily lives, the availability of reliable and robust connections to wireless service providers becomes a critical element for communities across the country. While the vast majority of wireless sites can accommodate the needs for voice calls, the existing wireless networks are experiencing challenges in providing adequate bandwidth to their end-user customers for the transmission of data across their networks.

Each WCF site is capable of serving a pre-determined maximum number of simultaneous users in a geographic area. The introduction of wireless personal digital assistants like the Blackberry, web-capable cell phones, wireless modems for internet access, along with bandwidth intensive applications and services like streaming music and video, have placed a strain on the wireless infrastructure as end-users tend to "sit & surf" for longer periods of time in a stationary location.

The bandwidth capacity, also referred to as backhaul, in the service provider's network has a direct impact on the speed at which data is downloaded and uploaded to the user's wireless device. Data being sent over a wireless connection may include internet access, streaming video and entertainment, and in the future, live broadcasts of television programming. In order for end-users to have a satisfactory experience while using these bandwidth intensive applications and services, the wireless service providers must improve the performance and availability of their existing networks.

**ANALYSIS &**
**ASSESSMENT**

**Recent staff action.**
The City was approached by companies that are interested in installing and operating wireless infrastructure known as distributed antenna systems (DAS) in the ROW. In early meetings, the companies inquired about the existing fee for WCF in the ROW of $8,475 and questioned if the City would consider alternative fees for the DAS wireless infrastructure sites.

City staff met to discuss the merits of the existing fee structure and conducted benchmark studies of WCF in ROW fees that are assessed by other Arizona municipalities and government agencies. Additional fee information on WCF in ROW was collected from several government agencies across the country.

There are two municipalities (Chandler and Tucson) that have a two-tiered fee structure for WCF in the ROW; one fee covered the installation of the antenna structure only in the ROW and another fee applied to WCF sites that had both the antenna structure and ground equipment in the ROW. The California Department of Transportation (Caltrans) has a three-tiered fee structure that provides different annual fees based upon the number of antennas at a WCF site and the square footage of the ground equipment.

*Guiding Principles*

The team of City staff that explored and reviewed various fee structure options represented several disciplines, including ROW management, transportation, planning & development, asset management, and telecommunications policy. The team used the following "guiding principles" as the key concepts while examining the fee structures:

- The administration is not engaged in individual "negotiations." We are contemplating something that is broadly applicable.
- Balance is being sought between community and policy-maker needs and desires, and the needs and desires of the industry.
- Consideration is being given to an alternative to a "one size fits all" fee structure.
- The primary administrative focus at this time is on usage of the ROW.
  Key question: Is there a broadly applicable alternative that is technology/usage "neutral"?
- Consideration is being given to the notion of recommending "incentives" for acceptable stealth approaches and use of existing vertical assets.

*Overview of Proposed Fee Structure*

The proposed annual encroachment permit fee for WCF in the ROW has two components, an Antenna Base Fee for the vertical element i.e., pole or structure that the antenna(s) are mounted on, and a Ground Equipment Fee.

The Antenna Base Fee is comprised of three categories: 1) WCF sites with antennas mounted on an existing vertical element i.e., streetlights, traffic signal poles, power poles, etc., 2) WCF sites with antennas mounted on a new vertical element that is stealth or utilizes alternate concealment when existing vertical elements are not available, and 3) WCF sites with antennas mounted on a new, non-existing vertical element that is neither stealth or concealed in appearance. In cases where the existing vertical element is replaced for structural purposes with a pole designed to support the antennas and cabling, the WCF would be categorized as being installed on an existing vertical element. In addition, the Antenna Base Fee includes up to 50 cubic feet of ground equipment and any electrical conductors necessary to operate the WCF site.

The Ground Equipment Fee would be calculated on the cubic feet of the ground equipment using a flat, four-sided "box" that covers the ground equipment from the top of the equipment to the ground, and from side-to side, including any foundation or pad for the equipment. For situations where there is more than one ground equipment fixture or cabinet (adjacent to each other), the equipment fixtures and/or cabinets are deemed to be part of the same contiguous ground equipment space and would be measured together within one box.

A WCF site that has both the vertical element and ground equipment in the ROW would be assessed an amount equal to the Antenna Base Fee plus the Ground Equipment Fee. A WCF site that has the antennas installed on a vertical element in the ROW but the ground equipment is located on private property would be assessed the Antenna Base Fee only. Likewise, a WCF site with antennas on a vertical element located on private property but with the ground equipment in the ROW, would be assessed the Ground Equipment Fee only.

**Policy implications.**

*Effective Date of New Fee Schedule*

The new encroachment permits fees for WCF in the ROW would apply prospectively to all WCF sites that have a "Standard Project Application" for Development submitted on July 2, 2009 or later.

*New Fee Schedule Impact on Existing WCF in ROW*

All existing WCF in ROW, WCF sites that have received Planning approval, and any WCF sites with a "Standard Project Application" for Development submitted no later than July 2, 2009 would be eligible to have the annual WCF in ROW encroachment permit fee set at a rate not to exceed $8,602 for FY 2009/2010. The rate of $8,602 is subject to any annual increases of the Encroachment Permits/Improvements Fee Schedule adopted by City Council.

WCF sites in the ROW that are "on-air" prior to July 3, 2009 and are subsequently modified would be subject to this new annual encroachment permit fee structure for WCF in the ROW when the vertical element is replaced or when the ground equipment increases in size.

**Related matters**

Some entities which install wireless communication facilities in the ROW also seek to install underground conduit, cable, fiber optics and/or wire in conjunction with the WCF site. The City does not currently have a published fee structure for such installations. These fees can also sometimes be limited by applicable federal or state law. Staff is currently evaluating potential standard encroachment fees for underground conduit, cable, fiber optics, and/or wire. Staff anticipates bringing a proposal to Council in an upcoming meeting.

**Industry involvement and targeted Community notification.**

City staff met with representatives from the wireless service providers (AT&T, Cricket, T-Mobile, Verizon/Alltel) and other wireless companies (NewPath Networks, Next G Networks) to get their feedback on the proposed WCF in ROW fee structure.

In addition, there are approximately 75 citizens who have asked to be kept informed of any developments related to wireless facilities, specifically regarding NewPath Networks. These are homeowners, HOA leaders, the Scottsdale Chamber and other interested parties who have expressed an interest as a result of staff outreach or Development Review Board hearings.

**RESOURCE IMPACTS**

**Future budget implications.**
Under the proposed fee structure, there are 23 existing WCF in the ROW sites that would have the Antenna Base Fee only. The fiscal impact of this proposed fee structure on current fees for WCF in the ROW is a net reduction in fees of $128,593 for FY2009/2010 and beyond.

| | | |
|---|---|---|
| $8,602 | Existing FY09/10 fee | |
| - $3,011 | Proposed new base fee for antenna only sites) | |
| ($5,591) | The reduction in annual WCF in ROW fee for each WCF site with antenna structures only or WCF with antenna structures with ground equipment less than 50 cubic feet | |

The net financial impact is calculated by multiplying the 23 existing WCF sites with Antenna Base Fee only by ($5,591) = ($128,593). Should the City choose not to cap the fee for existing sites at $8,602 the overall financial impact would be $21,760.

**OPTIONS & STAFF RECOMMENDATION**

**Option A:**

Approve Resolution No. 7983 establishing an adjusted fee schedule for wireless communications facilities in the City's rights-of-way and repeal Resolution No. 6761 establishing rates and fees for WiFi service providers.

**Option B:**
Direct staff to develop another adjusted fee structure and bring back to Council for consideration at a later date.

**Option C:**
Recommend no change to the existing fee structure.

**Staff Recommendation:**
Option A

**RESPONSIBLE DEPT(S)**

Transportation, Traffic Engineering and Right-of-Way Management, Planning & Development, Asset Management, Information Systems

**STAFF CONTACTS**

Bradley Hartig, Chief Information Officer – Information Systems
bhartig@scottsdaleaz.gov
480 312-7757

David Ellison, Assistant City Manager
dellison@scottsdaleaz.gov
480 312-4510

:

**APPROVED BY**

David Richert, General Manager – Planning & Development          Date
drichert@scottsdaleaz.gov
(480) 312-2890

Dan Worth, General Manager – Municipal Services          Date
dworth@scottsdaleaz.gov
(480) 312-5555

Scott McCarty, Chief Financial Officer – Financial Services          Date
smccarty@scottsdaleaz.gov
(480) 312-7582

*Bradley A. Hartig*                                      5/27/09
Brad Hartig, Chief Information Officer – Information Systems          Date
bhartig@scottsdaleaz.gov
(480) 312-7615

*David Ellison*                                      5/28/09
David Ellison, Assistant City Manager          Date
dellison@scottsdaleaz.gov
(480) 312-4510

**ATTACHMENTS**

1.  Resolution 7983
2.  WiFi Fee Schedule (from Resolution 6761)
3.  NextG Letter

RESOLUTION NO. 7983

A RESOLUTION OF THE CITY OF SCOTTSDALE, MARICOPA COUNTY, ARIZONA, ADOPTING AN ADJUSTED FEE SCHEDULE FOR WIRELESS COMMUNICATION FACILITIES IN THE CITY'S RIGHTS-OF-WAY AND REPEALING RESOLUTION 6761 ESTABLISHING RATES AND FEES FOR WIFI SERVICE PROVIDERS.

WHEREAS, the City Council previously adopted a schedule of fees associated with wireless communication facilities;

WHEREAS, the City Council is authorized by City Code § 47-107 to establish fees for wireless communication facilities and the City Council may adjust these fees on an annual basis; and

WHEREAS, the fees for wireless communication facilities have been examined; and

WHEREAS, certain changes with respect to the industry have occurred since the fees for wireless communication facilities were first adopted; and

WHEREAS, the City desires to adopt a fee schedule for wireless communication facilities which is fair and reasonable and which can be applied by the City on a competitively neutral basis.

NOW, THEREFORE, BE IT RESOLVED by the Mayor and Council of the City of Scottsdale, Arizona, as follows:

Section 1.    The City Council hereby approves and adopts the fee schedule for wireless communication facilities in the City's rights-of-way attached hereto as Exhibit A, and incorporated by reference to be a part of this resolution as if fully set forth herein. The new fees set forth and attached hereto as Exhibit A shall take effect on July 2, 2009.

ATTACHMENT 1

Section 2.     The official schedule of rates and fees for wireless communication facilities and personal wireless service facilities enacted by Resolution 7587 is repealed effective July 2, 2009.

Section 3.     The official schedule of rates and fees for WiFi Service Providers as enacted by Resolution 6761 is repealed effective July 2, 2009.

PASSED AND ADOPTED by the Council of the City of Scottsdale, Maricopa County, Arizona this 2nd day of June, 2009.

ATTEST:

CITY OF SCOTTSDALE, an Arizona
municipal corporation

By:_____
    Carolyn Jagger,
    City Clerk

By:_____
    W. J. "Jim" Lane,
    Mayor

APPROVED AS TO FORM:

By:_____  *Assт Cιтy Aттy*
   *per*  Deborah Robberson, City Attorney

Exhibit A

# Annual Encroachment Permit Fees
## for
## Wireless Communications Facilities in the Rights-of-Way

The annual encroachment permit fee for wireless communications facilities (WCF) in the rights-of way (ROW) has two components: 1) an Antenna Base Fee for the vertical element i.e., pole or structure that the antenna(s) is mounted on, and 2) a Ground Equipment Fee.  The total annual fee for a WCF in the ROW site varies according to the type of antenna structure and the cubic feet of the ground equipment.

**Category 1 – WCF with antenna(s) on an EXISTING vertical element or pole and any associated ground equipment**
Each WCF site will have an Antenna Base Fee of $3,011 (35% of Proposed FY09/10 ROW Fee of $8,602) for a WCF site in the ROW, plus a Ground Equipment Fee (if applicable) for cubic feet of ground equipment in the ROW, as set forth below:

|  | Fee per max. cu. ft. | Annual Equipment Fee | Total WCF Annual Fee |
|---|---|---|---|
| A.  Total is 1 cu. ft. up to 50 cu. ft. | Included | Included | $ 3,011 |
| B.  Total is 51 cu. ft. up to 200 cu. ft. | $28.00 | $ 5,600 | $ 8,611 |
| C.  Total is 201 cu. ft. up to 300 cu. ft. | $28.00 | $ 8,400 | $11,411 |
| D.  Total is 301 cu. ft. up to 400 cu. ft. | $28.00 | $11,200 | $14,211 |
| E.  Total is 401 cu. ft. to 500 cu. ft. or more | $28.00 | $14,000 | $17,011 |

**Category 2 – WCF with antenna(s) mounted on a vertical element that is stealth or utilizes alternate concealment when existing vertical elements are not available, and any associated ground equipment**
Each WCF site will have an Antenna Base Fee of $3,183 (37% of Proposed FY09/10 ROW Fee of $8,602) for a WCF site in the ROW, plus a Ground Equipment Fee (if applicable) for cubic feet of ground equipment in the ROW, as set forth below:

|  | Fee per max. cu. ft. | Annual Equipment Fee | Total WCF Annual Fee |
|---|---|---|---|
| A.  Total is 1 cu. ft. up to 50 cu. ft. | Included | Included | $ 3,183 |
| B.  Total is 51 cu. ft. up to 200 cu. ft. | $28.00 | $ 5,600 | $ 8,783 |
| C.  Total is 201 cu. ft. up to 300 cu. ft. | $28.00 | $ 8,400 | $11,583 |
| D.  Total is 301 cu. ft. up to 400 cu. ft. | $28.00 | $11,200 | $14,383 |
| E.  Total is 401 cu. ft. to 500 cu. ft. or more | $28.00 | $14,000 | $17,183 |

**Category 3 -- Fees for each WCF with antenna(s) on a new, (non-existing) vertical element or pole that is neither stealth or concealed in appearance and any associated ground equipment**
Each WCF site will have an Antenna Base Fee of $4,301 (50% of Proposed FY09/10 ROW Fee of $8,602) for a WCF site in the ROW, plus a Ground Equipment Fee (if applicable) for cubic feet of ground equipment in the ROW, as set forth below:

|  | Fee per max. cu. ft. | Annual Equipment Fee | Total WCF Annual Fee |
|---|---|---|---|
| A.  Total is 1 cu. ft. up to 50 cu. ft. | Included | Included | $ 4,301 |
| B.  Total is 51 cu. ft. up to 200 cu. ft. | $28.00 | $ 5,600 | $ 9,901 |
| C.  Total is 201 cu. ft. up to 300 cu. ft. | $28.00 | $ 8,400 | $12,701 |
| D.  Total is 301 cu. ft. up to 400 cu. ft. | $28.00 | $11,200 | $15,501 |
| E.  Total is 401 cu. ft. to 500 cu. ft. or more | $28.00 | $14,000 | $18,301 |

Exhibit A

The annual encroachment permit fees for wireless communications facilities in the rights-of-way categories above shall be administered according to the following rules:

1) The fee structure shall apply to the installation of any antennas, antenna structures, ground equipment, electronics, cabinets, and other appurtenances required or associated with the operation of a wireless communications facility (WCF) in the City's rights-of-way (ROW).

> A) All existing WCF in ROW, WCF sites that have received Planning approval, and any WCF sites with a "Standard Project Application" for Development submitted no later than July 2, 2009 will be eligible to have the annual WCF in ROW encroachment permit fee set at a rate not to exceed $8,602 for FY 2009/2010. The rate of $8,602 is subject to any annual increases of the Encroachment Permits/Improvements Fee Schedule adopted by City Council.

> B) WCF sites in ROW that are "on-air" prior to July 3, 2009 and are subsequently modified will be subject to this new annual encroachment permit fee structure for WCF in the ROW when the vertical element is replaced or when the ground equipment increases in size.

2) Antenna Structures and Base Fee – In cases where the existing vertical element is replaced for structural purposes with a pole designed to support the antennas and cabling, the WCF will be categorized as being installed on an existing vertical element. The Antenna Base Fee includes up to 50 cubic feet of ground equipment and any electrical conductors necessary to operate the WCF site.

3) Ground Equipment Fee – The ground equipment measurement is calculated by the size of a flat, four-sided "box" that will cover the ground equipment from the top of the equipment to the ground (non-improved dirt surface), and from side-to side, including any foundation or pad for the equipment. For situations where there is more than one ground equipment fixture or cabinet (adjacent to each other), the equipment fixtures and/or cabinets are deemed to be part of the same contiguous ground equipment space and will be measured together within one box. Electrical meters and telco pedestals are not included in the ground equipment.

4) WCF site that has both the vertical element and ground equipment in the ROW will be assessed an amount equal to the Antenna Base Fee plus the Ground Equipment Fee, except that:

> A) WCF sites that have the antennas installed on a vertical element in the ROW but the ground equipment installed on private property will be assessed the Antenna Base Fee only.

> B) WCF sites with antennas on a vertical element located on private property but with the ground equipment in the ROW, will be assessed the Ground Equipment Fee only. If the ground equipment is less than 50 cubic feet, the annual Ground Equipment Fee shall be the actual cubic feet of the ground equipment multiplied by the cubic foot rate (for FY2009/2010 the rate is $28 per cubic foot).

5) All WCF in the ROW must have a Permission for Private Improvement in the ROW (PIR) document submitted to the City for each WCF site installed and operated in the ROW.

6) An invoice for the annual WCF in the ROW permit fee is sent to the person and address provided on the PIR document, one month prior to the anniversary of the PIR permit issuance date.

7) The PIR is an encroachment permit allowing the WCF to be in the ROW; a WCF owner or applicant must obtain a "Permission to Work in the ROW" permit to construct, repair or maintain the WCF site.

8) The annual WCF in the ROW permit fee does not include fees and charges for any other planning & development fees, permits, plan review fees, inspection fees, or any other services or approvals that may be required by the City of an owner or applicant of a WCF in the ROW.

RESOLUTION NO. 6761

A RESOLUTION OF THE COUNCIL OF THE CITY OF SCOTTSDALE, MARICOPA COUNTY, ARIZONA, ESTABLISHING FEES FOR WiFi SERVICE PROVIDERS TO CONSTRUCT, INSTALL OR OPERATE A WIRELESS INTERNET AND DATA COMMUNICATIONS NETWORK IN THE CITY'S RIGHTS-OF-WAY

WHEREAS, the City desires to manage its public highways and rights-of-way to effectively and efficiently protect, maintain, enhance and control utility and other uses of the rights-of-way; and

WHEREAS, the City desires to facilitate use of right-of-way encroachment permits for antennas and related site equipment for wireless fidelity (also known as WiFi); and

WHEREAS, such WiFi equipment is much smaller and less intrusive than antennas and related site equipment for cellular phone systems; and

WHEREAS, the City desires to establish fees for placement of WiFi equipment within its public right-of-ways in a manner subject to its general highway and right-of-way management policies;

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Scottsdale, Maricopa County, Arizona, as follows:

Section 1.     Fees are hereby established for encroachment permits for WiFi sites as set out in Exhibit "A" attached hereto.

PASSED, ADOPTED AND APPROVED by the Council of the City of Scottsdale this _16th_ day of _December_, 2005.

ATTEST:

CITY OF SCOTTSDALE, an
Arizona municipal corporation

_____
Carolyn Jagger, City Clerk

_____
Mary Manross, Mayor

APPROVED AS TO FORM:

_____
Deborah Robberson, City Attorney

**ATTACHMENT 2**

RESOLUTION NO. 6761

**Encroachment Permit Fees for WiFi Sites**
*Sites not in a concentrated coverage area*
FY 05/06: $250 annually per site
FY 06/07: $350 annually per site
FY 07/08: $450 annually per site
FY 08/09: $550 annually per site

*Sites within concentrated coverage areas of at least 2 sq. miles but less than 5 sq. miles*
FY 05/06: $50 annually per site
FY 06/07: $75 annually per site
FY 07/08: $100 annually per site
FY 08/09: $150 annually per site

*Sites within concentrated coverage areas of at least 5 sq. miles but less than 10 sq. miles*
FY 05/06: $40 annually per site
FY 06/07: $50 annually per site
FY 07/08: $75 annually per site
FY 08/09: $100 annually per site

*Sites within concentrated coverage areas of at least 10 sq. miles but less than 25 sq. miles*
FY 05/06: $40 annually per site
FY 06/07: $50 annually per site
FY 07/08: $50 annually per site
FY 08/09: $60 annually per site

*Sites within concentrated coverage areas of at least 25 sq. miles but less than 50 sq. miles*
FY 05/06: $30 annually per site
FY 06/07: $40 annually per site
FY 07/08: $40 annually per site
FY 08/09: $50 annually per site

*Sites within concentrated coverage areas of at least 50 sq. miles*
FY 05/06: $20 annually per site
FY 06/07: $30 annually per site
FY 07/08: $30 annually per site
FY 08/09: $40 annually per site

The fee categories above shall be administered for each network according to the following rules:

1) It is the policy of the City of Scottsdale to set its WiFi encroachment permit fee structure to encourage full coverage for reliable WiFi service within large contiguous areas of the City.

2) The fee for a site within a concentrated coverage area shall be based on the size of the area of concentrated coverage as set out in the schedule above.

3) The fee for a site that is not within a concentrated coverage area shall be set out above for sites not within a concentrated coverage area.

4) The fee for a site that is located within one mile of a concentrated coverage area shall be the same as if the site were located within the concentrated coverage area.

EXHIBIT A
Page 1 of 2

RESOLUTION NO. 6761

5) An area of a stated size, e.g., five square miles, will only be considered to have concentrated coverage if adequate sites are installed to provide reasonably reliable service everywhere within that area. A concentrated coverage area of a stated size, e.g., five square miles, shall be a rectangular area that is no more than twice as wide as it is long.

6) The annual fee for each site is due and payable for each year in advance on the date the encroachment permit is issued and on each annual anniversary of that date. The amount of the annual fee for each site for the first year is set on the date the encroachment permit is issued based on the circumstances then existing, and again on each anniversary of that date for each subsequent year based on the circumstance then existing.

7) A network is any combination of one or more sites that are operated by a single provider that are simultaneously available to the provider's customers. A provider may have more than one network in the city. A site within a network may be required to pay a different fee than another site within the same network.

8) To encourage early providers, the following alternative fees shall apply to a network's sites located within any rectangle one mile wide and two miles long if at least 12 permits are issued at a single time for sites located in the rectangle. This reduced fee shall also apply to additional sites within the rectangle and to sites within one mile of the rectangle.

FY 05/06: $50 annually per site
FY 06/07: $150 annually per site
FY 07/08: $200 annually per site
FY 08/09: $250 annually per site

9) The City Council may revise these fees. The City Council intends to set new fees before the end of FY2008/2009. If the Council fails to do that for any reason, then the FY2008/2009 fees shall remain in effect until the City Council sets new fees.

EXHIBIT A
Page 2 of 2

# P S R   l a w f i r m ,   l l c

w/ www.ryanlegal.net

c/ patrick.ryan@ryanlegal.net

patrick ryan, *phd*

1444 blake street

denver, co 80202

t/ 303.785.8990

f/ 303.265.9737

May 22, 2009

<u>VIA EMAIL AND U.S. MAIL</u>

CITY OF SCOTTSDALE
Attn: Eric C. Anderson, Esq.
Assistant City Attorney
Scottsdale, AZ 85251

     re:    *NextG Networks of California, Inc.*

Dear Mr. Anderson:

Thank you for meeting with us on May 12th, 2009 to discuss various points related to the plans of NextG Networks of California, Inc. ("NextG") to deploy its telecommunications network in the public way of the City of Scottsdale ("City"). While NextG has significant concerns about the fee structure that the City is proposing, we hope that there is still time to reach an agreement that would be consistent with state and federal statutes that pertain to access to the public rights-of-way. However, we are providing this letter of protest for inclusion in the file that will be considered at the upcoming City Council meeting scheduled for June 2, 2009. I hope that we can discuss prior to then, but recognize that the letter is delivered later than the schedule may permit.

We have reviewed the materials provided from the public-records request, and observe that the rates levied by the City vary widely. For example, fees imposed on companies licensed to transmit wireless signals by the Federal Communication Commission ("FCC") are not entirely consistent, but seem average approximately $8,000 per year, as the City has previously indicated. But any consistency stops there: the fees levied on the cable companies (such as the Cox agreement) average 5% of revenue, and the revenue-sharing component for the cable company does not appear to apply to the company's telephone services. In another example of disparate treatment, the agreement with TW Telecom of Arizona, LLC is based on an interstate fee of $1.92 per linear foot per year. However, Qwest Communications (*fka* U.S. West and Mountain States Telephone & Telegraph) apparently pays no fees whatsoever for access to the right-of-way due to their alleged "territorial franchise" status in the Arizona. An exhaustive analysis of the current agreements is not practicable or useful within the scope of this letter, but it is clear that the amounts vary greatly among telecommunications providers and that the City has attempted to create an opportunity for individual negotiation based on the type of technology used. The situation stands to be further complicated if the City creates yet another tier of standards and rates in its discussions with NewPath.

Since 47 U.S.C. 253(c) requires that local governments manage the rights-of-way on a nondiscriminatory basis, the City cannot justify having such a broad scheme of free, regulated,

DWT 12907475v1 0103871-000003

**ATTACHMENT 3**

and market-based rates, which varies arbitrarily apparently due to the technology being fiber, copper, coax or an antenna, or secondly, by time (with the longest occupants enjoying a clear market advantage with no payments). The Telecommunications Act of 1996 sets as a precept the principle of a level playing field for all entrants so that new companies (without regard to technology), and competitors like NextG, cannot be required to compete with fee structures for the right-of-way that incumbents avoid. *See TCG New York Inc., vs. City of White Plains*, 305 F.3d 67, 79 (2nd Cir. 2002). ("[A] municipality may not . . . impose a host of compensatory provisions on one service provider without placing any on another."). Municipalities like the City only enjoy "a very limited and proscribed role in the regulation of telecommunications." *AT&T Communications of the Southwest, Inc. v. City of Dallas*, 8 F. Supp. 2d 582, 591 (N.D. Tex. 1998). While we understand that it is the City's position that it is nondiscriminatory with respect to certain classes of providers (*e.g.*, cable is treated one way, FCC-licensed wireless carriers are treated another, and Qwest has its own treatment), there simply is no basis for this disparate approach based on seniority or type of technology. In short, the City cannot simply create its own classes on its own and charge different rates on a "nondiscriminatory" basis within its self-designated classes. While the matter is preempted by federal law through the nondiscrimination requirement, it is also clear in Arizona's statutes that the only permissible fee is the Transaction Privilege Tax pursuant to §§ 9-583(B)(1)-(5), 9-583(C)(1), currently set at 6.1% of gross revenue.

Additional comments are provided below:

1. PER-FOOT FIBER CHARGES. The City stated that it plans in the future to impose an annual per-foot charge to NextG and others maintaining underground facilities in the public way. However, our review of the material produced from the public-records request shows clearly that the City does not currently charge a uniform rate to all companies that use and occupy the public rights-of-way. In actuality, rates range wildly from zero (0) dollars per foot for the largest user of the public way (*i.e.*, the ILEC, Qwest and APS), to a flat payment of $200,000 "regardless of the number of sites actually used" (in the case of the 1995 agreement with US West New Vector Group). In no way is the City's current fee structure "competitively neutral and nondiscriminatory" as required by 47 U.S.C. § 253(c). While the agreement with TW Telecom of Arizona, LLC levies a per-foot rate of $1.92 per year, no such per-foot charges are levied on Qwest or on Cox, on APS, or on Salt River Project (which also has an integrated telecommunications offering). Whether the City would be successful in imposing such a uniform structure on all existing users of the public way would be speculation, and there is no reason for such speculation since the field has been preempted in Arizona (as further described in ¶3, below).

2. PER-POLE CHARGES. The City has not advanced a legally sustainable rationale for the per-pole charges that it wishes to levy on NextG (aside from the prior practice and success of similar charges on wireless carriers), which fees apparently range from approximately $3,000 to $12,000, depending on the cubic feet of the equipment installed. As to third-party poles owned by other public utilities, we believe that any City charges are a derogation of the rights that NextG enjoys under 47 U.S.C. § 224, since NextG must already pay a fee to the third party (*e.g.*, APS or Qwest). Indeed, in the case of such poles, the City should be entitled to no additional compensation since the poles

are already occupying the public right of way. Further, for any new pole, such fees are *per se* discriminatory, since the City does not levy such per-pole charges against the ILEC, Qwest or against APS. Further, charging a per-pole charge, a per-foot charge, and other access fees create scenarios of multiple compensation.

3. TRANSACTION PRIVILEGE TAX. The City has implied that NextG cannot avail itself of the terms of the Transaction Privilege Tax ("TPT"). We disagree, since the plain text of A.R.S. § 9-581 includes municipalities, like the City, within its scope. The current TPT that is allowed to be levied by the City is set at 6.1%.[1] Indeed, this is higher than the average that NextG pays, which is only 5% of revenue, but is consistent with the agreements that NextG has elsewhere in Arizona, such Pima County and Tucson. We note that this rate is also higher than the amount that the City charges the cable companies, which is 5% of revenue, *and which exempts telecommunications from its scope*. Notwithstanding, the TPT is the maximum permissible rate in the state, and NextG is willing to pay it, in spite of the fact that the City does not appear to charge it to anyone else.

4. CERTIFICATE OF CONVENIENCE AND NECESSITY. NextG holds a Certificate of Convenience and Necessity ("CCN") from the Arizona Corporation Commission ("ACC") in Decision No. 68915 (Aug. 29, 2006). NextG's CCN clearly describes and authorizes NextG's "private line and intrastate access services in order to provide transport and backhaul services of voice and data signals, primarily for wireless providers." *Id.*, at ¶10. In NextG's CCN, the ACC stated as a conclusion of law that NextG "is a public service corporation within the meaning of Article XV of the Arizona Constitution and A.R.S. §§40-281 and 40-282." *Id.* at p. 6, ¶1. As a condition of issuing a license or franchise to use the "public highways" to construct, install, operate and maintain telecommunications facilities, a political subdivision in Arizona may impose "reasonable, competitively neutral and nondiscriminatory requirements" on applicants, which may include only certain enumerated requirements, including "proof that the applicant has received a certificate of convenience and necessity from the Arizona [C]orporation [C]ommission." As a condition of issuing a license or franchise to use the public highways to construct, install, operate and maintain telecommunications facilities, a political subdivision in Arizona may impose, pursuant to A.R.S. §§ 9-583(B)(1)-(5), 9-583(C)(1), "reasonable, competitively neutral and nondiscriminatory requirements on applicants"; but the statute contains a very limited list of requirements, all of which are complied with by NextG. NextG is similarly regulated in several states, and the matter has been addressed extensively in litigation elsewhere (and consistently resolved in NextG's favor), such as Texas and California. *See Application of NextG Networks of Illinois, Inc., for a Service Provider Certificate of Operating Authority*, Texas PSC Docket No. 30616, Order No. 4 (Feb. 9, 2005) (denying the City of Austin's request to intervene and attempt to stop the issuance of statewide operating authority as a regulated entity). *Also see City and County of San Francisco vs. NextG Networks of California, Inc., Opinion Resolving Complaint*, D 06-01-006 (Jan 12, 2006) (rejecting the City and County of San Francisco's request that the California Public Utilities Commission review and revoke NextG's authority under state law for allegations that its services do

---

[1] *See* http://www.revenue.state.az.us/TpT/tptrates/indextpt.asp.

not qualify for statewide regulation). The City does not have authority unilaterally to decide that NextG's CCN is invalid or improperly granted. Absent an order to the contrary by the ACC, NextG's CCN is binding and conclusive evidence of its status under Arizona law, and the City must abide by it.

As we discussed during our meeting, it is urgent that NextG reach an agreement in order to deliver services to its customer. As such, NextG is willing to offer the following to the City:

(a) PAYMENT OF TPT RATES. NextG will pay the City the TPT rate of 6.1%. Aside from the fact the such a fee is legally mandated by the State of Arizona as the only permissible fee, a fee based on percentage should be viewed as attractive to the City, since revenue will increase as the number of customers increases.

(b) ENCROACHMENT FEES. NextG will pay the City the published fees required for encroachment and occupation of the public rights-of-way. Indeed, NextG is also willing to discuss additional administrative fees appropriate to expedite the processing of the permits consistent with the deployment schedule required.

(c) CITY INFRASTRUCTURE. Since antenna infrastructure cannot be placed underground, NextG is willing to enter into an agreement with the City to use its infrastructure for that purpose (and minimize thereby new placements of poles). NextG's standard rate for use of this infrastructure is $500.00 per year. We believe that this is a significant value to the City, since it allows the infrastructure to earn revenue that cannot otherwise be gained, since there is no basis to charge for placing new poles in the right-of-way. As noted in ¶2, above, NextG is not willing to make any per-pole payment in connection with its use of third-party-owned poles in the public way in accordance with 47 U.S.C. § 224 other than the TPT and such uniformly-imposed minor fees directly related to the City's costs of managing NextG's attachments on such poles in the public way.

NextG asks that the City consider any alternative arrangements it may wish to propose for us by our next meeting and that the City agree to discuss this matter with NextG. We are sincerely interested in working out a resolution to this matter. However, if the City adopts its ordinance in the form that is currently proposed, we fear that the opportunities to work out an amicable solution will be significantly curtailed.

Very truly yours,

Patrick S. Ryan
*Counsel for NextG*

cc:   Robert Delsman, Esq. (NextG)
      Joe Milone (NextG)
      Scott Thompson (Davis, Wright & Tremaine)

*Letter to Eric Anderson, Esq.*
*P. 4 of 4*

DWT 12907475v1 0103871-000003

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

COPY

JAN 0 7 2010

MICHAEL K. JEANES, CLERK
A. ASHBY
DEPUTY CLERK

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Jon Weiss, State Bar No. 015350
Direct Dial:  (602) 262-5382
Direct Fax:  (602) 734-3850
EMail: JWeiss@LRLaw.com

DAVIS WRIGHT TREMAINE LLP
T. Scott Thompson (pro hac vice application forthcoming)
Leslie Gallagher Moylan (pro hac vice application forthcoming)
1919 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006
Telephone:  (202) 973-4200

Attorneys for Plaintiff
NextG Networks of California, Inc.

## SUPERIOR COURT OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| NEXTG NETWORKS OF CALIFORNIA, INC. d/b/a/ NEXTG NETWORKS WEST, | ) |
| Plaintiff, | ) |
| vs. | ) |
| CITY OF SCOTTSDALE, | ) |
| Defendant. | ) |

No.  CV2010-000832

**CERTIFICATE OF COMPULSORY ARBITRATION**

The undersigned certifies that he knows the dollar limits and any other limitations set forth by the Arizona Rules of Civil Procedure and the applicable local rules of practice, and further certifies that this case is **not** subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure, because Plaintiff seeks equitable relief.

DATED this 7th day of January, 2010.

LEWIS AND ROCA LLP

By _____
Jon Weiss

and

2138163.1

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP
T. Scott Thompson (pro hac vice application
forthcoming)
Leslie Gallagher Moylan (pro hac vice
application forthcoming)
1919 Pennsylvania Avenue NW, Suite 200
Washington, DC  20006

Attorneys for Plaintiff
NextG Networks of California, Inc.

2

2138163.1